IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-29564 MER |
| MARK A. KENDALL, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| ) | |
| CHARLES SCHLOSSER, CHAPTER 7 ) | Adversary No. 10-1710 MER |
| TRUSTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JANET K. KENDALL, and THE J. K. ) | |
| FAMILY TRUST ) | |
| ) | |
| Defendants. ) | |

**ORDER**

THIS MATTER comes before the Court on the Defendants' *Motion to Amend Judgment*, filed at Docket No. 80 (the "Motion to Amend"). The Defendants seek an order vacating the Court's August 6, 2012 judgment regarding only the $210,000 transfer to Laskin Medical, LLC (the "Laskin Transfer"). The Defendants argue the Laskin Transfer was not at issue in the parties' dispute, because it was not included as an issue in the parties' Joint Pretrial Statement and so had been waived, and because Laskin Medical, LLC was not a named party in this proceeding.

The Court recognizes the general rule, noted by the Defendants, that a pretrial order controls the course of litigation.[1] However, the United States Court of Appeals for the Tenth Circuit has also stated as follows:

> Proper pretrial orders are indeed powerful, but even at their best they should be "liberally construed to cover any of the legal or factual theories that might be embraced by their language." *Rodrigues v. Ripley Industries, Inc.*, 507

---

[1] *See* FED. R. CIV. P. 16(d), made applicable to this proceeding by FED. R. BANKR. P. 7016, stating a pretrial order "controls the course of the action unless the court modifies it." *See also Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1276 (10th Cir. 2006) (discussing previous Rule 16(e), containing the same provisions as current Rule 16(d)); *Bleck v. City of Alamosa, Colorado*, 839 F. Supp. 2d 1149, 1151 n.4 (D. Colo. 2012).

F.2d 782, 787 (1st Cir. 1974). This court has warned that the pretrial order "is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality. We must not allow ourselves to construe the pretrial order in the spirit of a common law pleading." *Century Refining Co. v. Hall*, 316 F.2d 15, 20 (10th Cir. 1963). The reasons for avoiding overly technical applications of pretrial orders are amplified when, as in this case, the pretrial order is not properly drawn, is not definitive, specific, complete or detailed.[2]

More recently, the Tenth Circuit explained the effect of pretrial orders will be more strictly enforced when the order "has been refined over time, properly drawn, and drafted with substantial specificity."[3] However, a pretrial order will be interpreted more liberally where the order is "not drafted with substantial care and specificity."[4]

In *Peters v. Bryan*, cited by the Defendants, the United States District Court for the District of Colorado addressed a case where a bankruptcy court had found a trust did not constitute a valid spendthrift trust, although the claim was not pled in the complaint. In affirming the bankruptcy court's ruling as to the validity of the trust, Judge Walker Miller stated:

[Defendant] argues that the issue of the spendthrift trust was not tried by express or implied consent. Trustee argues that, even if he had not properly presented the spendthrift trust issue in the Complaint and Joint Pretrial Statement (ECF No. 72), [Defendant] consented to his raising the issue when he failed to object to the Trustee's presentation of evidence of an invalid spendthrift trust when it was presented.

In this circuit, a litigant "impliedly consents to the trial of an issue not contained within the pleadings either by introducing evidence on the new issue or by failing to object when the opposing party introduces such evidence." *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1280 (10th Cir.2004). The purpose of the timely objection requirement is to ensure that "the nature of the error was called to the attention of the judge, so as to alert him to the proper course of action and enable opposing counsel to take proper corrective measures." *In re Blatzer*, 2010 WL 445062 (10th Cir.(Feb.8) 2010) (citing *Sorensen v. City of Aurora*, 984 F.2d 349, 355

---

[2] *Trujillo v. UniRoyal Corporation*, 608 F.2d 815, 818 (10th Cir. 1979).

[3] *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000) (citing *Cleverock Energy Corp. v. Trepel*, 609 F.2d 1358, 1361–62 (10th Cir. 1979) and *Rigby v. Beech Aircraft Co.*, 548 F.2d 288, 291-92 (10th Cir. 1977)).

[4] *Id.* (citing *Whalley v. Sakura*, 804 F.2d 580, 582-83 (10th Cir. 1986) and *Trujillo*, 608 F.2d at 817-19)).

(10th Cir.1993)). The Tenth Circuit Court of Appeals has held that evidentiary objections must generally be made when the evidence is offered. *Pandit v. Am. Honda Motor Co., Inc.*, 82 F.3d 376, 379 (10th Cir.1996) (requiring contemporaneous objection so a definitive ruling can be made).[5]

Here, the Plaintiff's Complaint's First Claim for Relief expressly seeks avoidance and recovery of three transfers, including the Laskin Transfer (defined in the Complaint as the "Second Cash Transfer") as fraudulent transfers pursuant to 11 U.S.C. §§ 548 and 550.[6] Similarly, the Complaint's Second Claim for Relief seeks avoidance of the "Second Cash Transfer."[7] The Defendants' Answer admitted the Debtor is a part owner of Kendall Land Company, which issued a check in the amount of $210,000 to Laskin Medical, LLC, a company owned by Janet Kendall.[8] The Answer responded to the Complaint's claims for relief with a general denial of liability, and raised several affirmative defenses.[9] While the Answer raised the issue of the Plaintiff's standing and the Court's jurisdiction as to Kendall Land Company, nothing filed by the Defendants prior to the Motion to Amend questioned whether the $210,000 transfer to Laskin Medical was at issue.

---

[5] *Peters v. Bryan*, 2010 WL 3894035, at *6–7 (D. Colo. Sept. 29, 2010) aff'd sub nom. *In re Bryan*, 10-1503, 2012 WL 3608549 (10th Cir. Aug. 23, 2012).

[6] *Complaint* (Docket No. 1), ¶¶ 18 and 43–49. Unless otherwise noted, all future statutory references in the text will be to Title 11 of the United States Code.

[7] *Id.*, at ¶¶ 50-54. Further, the Complaint's prayer for relief seeks the following:

A. Upon the First Claim for Relief, that this Court enter judgment in favor of theTrustee and against Spouse and the Trust: (i) holding and adjudging that the House Transfer, Cash Transfer and Second Cash Transfer are actual fraudulent transfers and/or constructive fraudulent transfers under UFTA and § 544 of the Bankruptcy Code; (ii) avoiding the House Transfer, Cash Transfer and Second Cash Transfer; (iii) granting the Trustee a money judgment against Spouse for the value of the House, the Cash Transfer and Second Cash Transfer; and (iv) granting the Trustee a money judgment against the Trust for the value of the House.

B. Upon the Second Claim for Relief, that this Court enter judgment in favor of theTrustee and against Spouse and the Trust: (i) holding and adjudging that the House Transfer, Cash Transfer and Second Cash Transfer are fraudulent transfers pursuant to §548 of the Bankruptcy Code; (ii) avoiding the House Transfer, Cash Transfer and Second Cash Transfer pursuant to §548 and §550 of the Bankruptcy Code ; (iii) granting the Trustee with a money judgment against Spouse for the value of the House, the Cash Transfer and Second Cash Transfer; and (iv) granting the Trustee with a money judgment against the Trust for the value of the House.

[8] *Answer*, Docket No. 7, ¶ 18.

[9] *Id.*, pp. 5–6.

Unfortunately, the parties' Joint Pretrial Statement was not as carefully or clearly drawn. Specifically, the Laskin Transfer is discussed in the Joint Pretrial Statement under the heading "Summary of Plaintiff's Claims," as follows:

> Debtor began transferring cash and assets to his wife, Janet K. Kendall ("Defendant Spouse"). First, on October 9, 2008, Debtor transferred his $2 million home ("House") to Defendant Spouse ("House Transfer"). Next, on December 30, 2008, Debtor issued a $125,000 cashier's check to Defendant Spouse ("First Cash Transfer"). **Finally, on November 10, 2009, Debtor disbursed $210,000 from the accounts of Kendall Land Company, an entity controlled by Debtor, to Defendant Spouse ("Laskin Transfer").** Defendant Spouse gave no consideration for House Transfer or the First Cash Transfer. Although a promissory note was executed in connection with the Laskin Transfer, no payments have been made on account of the note. After Debtor's loans were in default and the subject of state court enforcement proceedings, Defendant Spouse set up and moved the $2 million House and **$335,000 cash** into a Cook Islands Trust – the J.K. Family Trust ("Defendant Trust"). **Defendant Trust gave no consideration or other value for the transfers.**
>
> The House Transfer and the First Cash Transfer to Defendant Spouse are avoidable as fraudulent transfers under both the bankruptcy code and the Colorado Uniform Fraudulent Transfers Act ("CUFTA"). The transfers should be avoided and returned to Debtor's bankruptcy estate for the benefit of Debtor's legitimate creditors pursuant to 11 U.S.C. §§ 544, 548, and 550.[10]

Moreover, the Joint Pretrial Statement states 11 U.S.C. § 544 gives the Plaintiff the right to avoid "the House Transfer, First Cash Transfer, and/or the Second Cash Transfer if any or all of those transfers are fraudulent transfers under state law."[11] The Joint Pretrial Statement also includes the amount of the Laskin Transfer in the aggregate amount of all cash transfers ($335,000). However, the Joint Pretrial Statement goes on to discuss the elements for establishing avoidance only mentioning the House Transfer and First Cash Transfer.[12] In addition, in the section labeled "Itemization of Damages and Description of Calculation," the Joint Pretrial Statement indicates the following damages: 1) avoidance of the House Transfer; 2) a $125,000 judgment against the Debtor; and 3) interest and fees.[13]

---

[10] *Joint Pretrial Statement* (Docket No. 60), pp. 2–3 (emphasis added).

[11] *Id.*, p. 22.

[12] *Id.*, p. 22, 24, 27, 28, and 30.

[13] *Id.*, p. 36.

The Court therefore finds the Joint Pretrial Statement contains unclear drafting and ambiguity, warranting the Court's use of liberal interpretation under *Koch* and related Tenth Circuit cases. The question then becomes whether the Defendants had reasonable notice of the Plaintiff's assertion of a claim as to the $210,000 Laskin Transfer, and whether the Defendants timely objected to the presentation of evidence regarding such a claim.

In this case, the Complaint itself contained a clear and plain statement indicating the Plaintiff intended to pursue the avoidance of the Laskin Transfer. The Defendants did not seek the dismissal of that claim, and, in fact responded to that claim in their Answer. In addition, both Mark Kendall and Janet Kendall testified regarding the purported loan of $210,000 to Laskin Medical, LLC, without any objection from the Defendants. Based on this testimony, the Court found Kendall Printing Company and Kendall Land Company were alter egos of Mark Kendall, and Laskin Medical, LLC was an alter ego of Defendant Janet Kendall. Laskin Medical, LLC therefore did not need to be a named party.[14] This evidence and other evidence presented to the Court supported a finding the $210,000 transfer from Kendall Land Company to Laskin Medical, LLC constituted a fraudulent transfer from Debtor Mark Kendall to Defendant Janet Kendall.

For these reasons, the Court finds the Defendants have not set forth grounds for amendment of the Court's August 6, 2012 Order, and the Court further finds the Defendants consented to the trial of the Laskin Transfer issue. Accordingly,

IT IS HEREBY ORDERED the Motion to Amend Judgment is DENIED.

Dated September 7, 2012            BY THE COURT:

_____
Michael E. Romero
United States Bankruptcy Judge

---

[14] *Id.*, p. 11.