FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit
May 7, 2013
Blaine F. Bates
Clerk

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE TENTH CIRCUIT**

| | |
|---|---|
| IN RE MARK A. KENDALL,<br>Debtor. | BAP No. CO-12-070 |
| JOLI A. LOFSTEDT, Chapter 7 Trustee,<br>Plaintiff – Appellee,<br>v.<br>JANET K. KENDALL and THE J.K. FAMILY TRUST,<br>Defendants – Appellants. | Bankr. No. 10-29564<br>Adv. No. 10-01710<br>Chapter 7<br><br>OPINION* |

Appeal from the United States Bankruptcy Court
for the District of Colorado

Before THURMAN, Chief Judge, CORNISH, and NUGENT, Bankruptcy Judges.[1]

CORNISH, Bankruptcy Judge.

The defendants, transferees of property from the debtor, appeal the bankruptcy court's order avoiding the transfers in favor of the Chapter 7 trustee

* This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8018-6.

1 The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. Fed. R. Bankr. P. 8012. The case is therefore ordered submitted without oral argument.

pursuant to 11 U.S.C. § 548,[2] and authorizing him to pursue recovery of the assets within the limitations of § 550(d). The defendants assert the bankruptcy court erred in determining the value of the debtor's business based on a liquidation rather than "going concern" basis, and using the lower liquidation value to conclude the debtor was insolvent at the time he made the transfers. After carefully reviewing the record on appeal and the applicable law, we find no error. Therefore, we AFFIRM the bankruptcy court's order.

## I. BACKGROUND[3]

This adversary proceeding involves voluntary transfers of real property and cash by the Chapter 7 debtor (or his alter ego) to his wife (or her alter ego), which subsequently became the property of an offshore trust settled in a popular asset protection jurisdiction. There is no dispute that the transfers took place after the debtor and his business began experiencing significant financial difficulties and within two years prior to filing bankruptcy. A brief preview of the persons and entities involved, as well as the transfers in question, will be helpful before launching into a more complete description of the factual details.

The Chapter 7 debtor is Mark A. Kendall ("Debtor"). Kendall Printing Company ("KPC") is a commercial printing business established and wholly owned by Debtor. Debtor is also the 82.4% owner and manager of Kendall Land Company ("KLC"), which owned and leased real property to KPC for its printing operations. Debtor married Janet K. Kendall ("Wife") in 2007. Wife, a medical esthetician, formed and owns Laskin Medical LLC, a skin care company ("Laskin"). Wife is also the settlor and beneficiary of the J.K. Family Trust

---

2 Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code.

3 The underlying facts of this case are undisputed. Accordingly, unless otherwise noted, this description is taken from the bankruptcy court's *Order* or the *Joint Pretrial Statement* entered in the case, *in* Appellants' Appendix at 26, 394.

("Family Trust"), an offshore trust established under the laws of the Cook Islands. Wife appointed Kathe Mizer, her mother ("Mother"), as trustee of the Family Trust. At issue in this appeal are three transfers of property made by Debtor or his alter ego: 1) a transfer of the marital residence owned solely by him, alleged to be worth approximately $2 million, to Wife; 2) a transfer of $125,000 in cash to Wife; and 3) a "loan" of $210,000 from KLC to Laskin with funds transferred from KPC. The assets were subsequently transferred by Wife to the Family Trust.

Debtor established KPC in 1984 and it was a profitable business for over 20 years. Debtor's financial difficulties began in 2006 after both Debtor and KPC borrowed heavily from New Frontier Bank ("Bank") to finance KPC's building, equipment purchases, and operations. In 2005 and 2006, Debtor took out two loans from Bank initially totaling approximately $2.2 million, and KPC took out four loans initially totaling approximately $5.2 million. Debtor personally guaranteed all four of KPC's loans from Bank. The largest of these loans was for purposes of purchasing a Heidelberg 10-color Perfector printing press (the "Press") that cost $3.85 million.[4] Unfortunately, the Press never performed as expected and was in fact defective. The Press malfunctioned continuously from the time of its purchase until KPC stopped doing business in late 2009, causing customer dissatisfaction, increasing operating costs, and decreasing KPC's overall efficiency.[5] As a result, KPC sustained large annual operating losses in 2006, 2007, and 2008.[6]

Between August 2007 and early 2009, Debtor and KPC constantly

---

[4] According to Debtor, at the time he purchased the Press, only ten other companies in the United States owned one, and it took at least five semi-trucks to move. *Transcript of Proceedings held on February 23, 2012* at 74, *in* Appellants' App. at 1338.

[5] *Id.* at 73-76, *in* Appellants' App. at 1337-40.

[6] *Id.* at 77-78, *in* Appellants' App. at 1341-42.

renegotiated the terms of their loan agreements with Bank to receive lower interest-only payments, extend maturity dates, and otherwise allow KPC to service monthly debt obligations despite insufficient revenues. But by February 2009, Debtor and KPC had stopped making payments on their loans, and asked Bank to completely restructure their indebtedness.

In early 2009, Debtor began trying to sell KPC to Pioneer Printing, another commercial printing company. However, in April 2009, the state banking commissioner closed Bank, and the FDIC was appointed as its receiver. The FDIC then sold KPC's loans to SummitBridge Credit Investments, LLC ("SummitBridge"), who rejected Debtor's proposed sale of KPC to Pioneer Printing. In November 2009, SummitBridge sent a demand letter to all KPC customers directing them to pay any money owed to KPC to SummitBridge. Debtor then ceased operations of, and permanently closed, KPC. Shortly thereafter, SummitBridge instituted state court collection proceedings against both Debtor and KPC.

During this period of extreme financial crisis, Debtor made three transfers of property that Trustee seeks to avoid and recover in this adversary proceeding. First, on October 9, 2008, Debtor transferred the marital residence, a home built by him during a previous marriage and owned solely by him, to Wife for no consideration. The residence had an alleged value of approximately $2 million and was unencumbered at the time of the transfer. The avowed purpose of the transfer was to provide Wife with collateral to be used in securing financing for Laskin. Second, on December 30, 2008, Debtor issued a cashier's check in the amount of $125,000 payable to Wife for no consideration. And third, on November 10, 2009, KLC, an entity controlled by Debtor (his alter ego), issued a check in the amount of $210,000 to Laskin, an entity controlled by Wife (her alter ego). A promissory note classifying the transfer as a loan was issued, but no payments on the "loan" were ever made. The alleged purpose of these two

transfers was to assist Wife with Laskin's start-up costs in establishing a line of pharmaceutical beauty products.

On February 19, 2010, Wife established the Family Trust under the laws of the Cook Islands, naming herself as beneficiary, and appointing Mother as trustee. On March 24, 2010, Wife recorded a warranty deed transferring the residence from herself to the Family Trust for no consideration. Wife also transferred ownership of Laskin Medical from herself to the Family Trust.

## II. BANKRUPTCY PROCEEDINGS

Debtor filed his Chapter 7 bankruptcy petition on August 2, 2010, and Charles Schlosser was appointed as trustee ("Trustee"). On September 30, 2010, Trustee commenced this adversary proceeding by filing a complaint against Wife and the Family Trust for avoidance and recovery of the assets transferred to Wife and Laskin by Debtor. Trustee alleged the transfers were actually and/or constructively fraudulent under § 548(a), as well as the Colorado Uniform Fraudulent Transfers Act ("CUFTA").[7]

A joint pretrial statement was entered on February 2, 2012, in which Trustee, Wife, and the Family Trust stipulated to a majority of the underlying facts regarding the transfers. The issues remaining for resolution during trial were whether Debtor made the transfers with the intent to hinder, delay, or defraud his creditors, and whether Debtor was insolvent at the time of the transfers, which included the proper valuation of KPC. A trial on these issues was held beginning on February 23, 2012, and continued on February 24, March 1, and March 6, 2012.

At trial, the bankruptcy court heard the testimony of numerous witnesses including Trustee, Debtor, Wife, Bank's president/CEO, Pioneer Printing's

---

[7] Like the Bankruptcy Code, CUFTA provides for recovery of property that has been transferred in an actually or constructively fraudulent manner. *See* Colo. Rev. Stat. §§ 38-8-101 to 112 (2012).

owner, and Summit Investment's asset manager. Additionally, Trustee presented the testimony of three expert witnesses: 1) an expert in business valuation, and solvency and feasibility analysis, who testified as to KPC's feasibility, KPC's appropriate valuation, and Debtor's insolvency; 2) an expert in auction valuation who testified as to the auction value of KPC's personal property and equipment; and 3) an expert in real estate valuation who testified regarding the value of the land and building owned by KLC and leased to KPC. Wife and the Family Trust presented one expert witness who was qualified as an expert in commercial printing equipment valuations and testified as to the value of KPC's equipment.

The primary valuation issues impacting the determination of Debtor's solvency were whether KPC should be valued as a going concern or on a liquidation basis, and the valuation of Debtor's liabilities on KPC debt obligations to Bank that he personally guaranteed. Trustee's business valuation expert testified that he valued KPC using an asset approach, as opposed to an income or market approach, because KPC had no viable way of going forward as of October 2008. According to Trustee's expert, Debtor had no expected future cash flows and insufficient assets to meet his obligations and sustain KPC. With respect to valuation of Debtor's liabilities on his personal guarantees of KPC's loans from Bank, Trustee's expert did not discount the amount owed by KPC because he believed it was likely KPC would default on the notes and Debtor would become personally liable. In light of these two valuations, together with Debtor's other assets and liabilities, Trustee's expert concluded that Debtor was insolvent at the time he made all three transfers.

After taking the matter under advisement, the bankruptcy court entered an order on August 6, 2012, avoiding the fraudulent transfers in favor of Trustee pursuant to § 548 and CUFTA, and authorizing him to pursue recovery of the assets within the limitations of § 550(d). The bankruptcy court determined all three transfers were actually fraudulent under § 548(a)(1)(A) because Trustee met

his burden of establishing intent by demonstrating the presence of seven of the eleven badges of fraud set forth in the Uniform Fraudulent Transfer Act.[8] Alternatively, the bankruptcy court concluded all three transfers were constructively fraudulent under § 548(a)(1)(B) because they were made to insiders for no consideration at a time when Debtor was insolvent.[9] Wife and the Family Trust timely appealed the bankruptcy court's order to this Court on August 15, 2012. Joli A. Lofstedt was substituted for Charles Schlosser as Chapter 7 trustee on December 20, 2012.[10]

## III. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from final orders, final collateral orders, and, with leave of court, interlocutory orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[11] None of the parties elected to have these appeals heard by the United States District Court for the District of Colorado. The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[12] The bankruptcy court's judgment avoiding fraudulent transfers and authorizing recovery of the assets by Trustee in this adversary proceeding is a final order for purposes of

---

[8] *Order* at 17, *in* Appellants' App. at 40.

[9] *Order* at 19, *in* Appellants' App. at 42.

[10] *Order Granting Motion to Substitute*, BAP Docket # 45.

[11] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002; 10th Cir. BAP L.R. 8001-3.

[12] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

appeal.[13]

## IV. STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error, and its legal conclusions are reviewed *de novo*.[14] Contrary to assertions made by Wife and the Family Trust in their brief that the applicable standard of review in this appeal is *de novo*, the bankruptcy court's determination of Debtor's solvency and its application of liquidation value versus going concern value for KPC are subject to the clearly erroneous standard of review.[15] A factual finding is "clearly erroneous" when "'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'"[16]

## V. ANALYSIS

Section 548 of the Bankruptcy Code permits a trustee to avoid any transfer made by the debtor within two years of filing a bankruptcy petition if it was either actually fraudulent under § 548(a)(1)(A), or constructively fraudulent under § 548(a)(1)(B).[17] Actual fraud requires the trustee to demonstrate that a debtor

---

13 *Lassman v. Keefe (In re Keefe)*, 401 B.R. 520, 523 (1st Cir. BAP 2009).

14 *Miller v. Bill and Carolyn Ltd. P'ship (In re Baldwin)*, 593 F.3d 1155, 1159 (10th Cir. 2010).

15 *In re Mama D'Angelo, Inc.*, 55 F.3d 552, 553 (10th Cir. 1995) (whether business is a going concern is a matter of valuation and determination is reviewed for clear error); *Jagow v. Grunwald (In re Allied Carriers' Exch., Inc.)*, 375 B.R. 610, 615 (10th Cir. BAP 2007) (determination that a debtor was insolvent when transfers were made is factual finding subject to clearly erroneous standard of review); *Stillwater Nat'l Bank & Trust Co. v. Kirtley (In re Solomon)*, 299 B.R. 626, 632 (10th Cir. BAP 2003) (determinations of solvency are questions of fact to which clearly erroneous standard of review applies).

16 *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *LeMaire ex rel. LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987)).

17 *See Wadsworth v. Word of Life Christian Ctr. (In re McGough)*, 467 B.R. 220, 224 (10th Cir. BAP 2012).

made the transfer with actual intent to hinder, delay, or defraud his creditors.[18] Constructive fraud requires the trustee to demonstrate that the transfer was made without receiving a reasonably equivalent value in exchange at a time when the debtor was in a "fragile financial condition."[19] A fragile financial condition is statutorily defined as being insolvent, possessing an unreasonably small capital,

---

[18] Section 548(a)(1)(A) provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

11 U.S.C. § 548(a)(1)(A).

[19] 5 *Collier on Bankruptcy* ¶ 548.05[3], at 548-77 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2001). Section 548(a)(1)(B) provides that a trustee can avoid a transfer if debtor:

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> >
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> >
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> >
> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business[.]

11 U.S.C. § 548(a)(1)(B).

or incurring debts beyond ability to repay.[20] On appeal, Wife and the Family Trust (collectively "Appellants") primarily assert the bankruptcy court erred when it valued KPC on a liquidation rather than "going concern" basis, and then permitted the lower liquidation value to be used in evaluating Debtor's solvency. In other words, Appellants claim that if KPC were valued as a going concern the transfers would not be actually or constructively fraudulent because Debtor was solvent when he made them.[21] Appellants misunderstand the significance of Debtor's alleged solvency.

Assuming for purposes of argument that KPC should have been valued on a going concern basis and that it would result in a determination that Debtor was solvent,[22] such a change in the facts does not necessarily change the results in this case. Debtor's solvency at the time he made the transfers does not, in and of itself, prevent the bankruptcy court from determining the transfers were actually or constructively fraudulent. Insolvency is only one of the eleven badges of fraud typically considered by bankruptcy courts in analyzing whether a transfer is actually fraudulent because it meets the § 548(a)(1)(A) statutory requirement of

---

[20] 11 U.S.C. § 548(a)(1)(B).

[21] Appellants also assert the bankruptcy court erred when it attributed 100% of the outstanding amount of KPC's debt obligations to Bank to Debtor as a result of his personal guarantees of those loans. *See* Appellants' Opening Brief at 17. However, this argument is somewhat subsumed by their argument that KPC should have been valued as a going concern and the impact of that hypothetically higher valuation on Debtor's solvency. As described below, Debtor's solvency versus insolvency is not determinative in evaluating whether the transfers were actually or constructively fraudulent.

[22] It appears highly unlikely that this would be the case. Appellants offered no expert testimony at trial with respect to solvency, or business feasibility and valuation. Their only expert witness was admitted to testify regarding commercial printing equipment valuations, and the bankruptcy court specifically found his testimony to be less reliable than that of Trustee's expert. Further, the bankruptcy court points out that Appellants' own Exhibit B, KPC's financial statement as of September 30, 2008, showed a negative equity in excess of $2 million. *See Order* at 15-16, *in* Appellant's App. at 38-39.

intent to hinder, delay, or defraud creditors.[23] Further, insolvency is only one type of "fragile financial condition" that satisfies the § 548(a)(1)(B) statutory requirements.[24] Therefore, Appellants' allegations of error, even if true, do not require that the bankruptcy court's decision be reversed.

**A. Actual Fraud**

In analyzing actual intent to hinder, delay, or defraud, we focus on the debtor's state of mind, and not on either the debtor's solvency or transferee's culpability.[25] Actual intent is, of course, difficult to prove so courts analyze the circumstances surrounding a transfer to determine whether intent can be inferred.[26] Circumstances that are so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent have become known as "badges of fraud."[27] The Uniform Fraudulent Transfer Act sets forth eleven badges of fraud that are often considered evidence from which actual fraud can be inferred. In a case interpreting the nearly-identical Utah Fraudulent Transfer Act,[28] the Tenth Circuit Court of Appeals listed the eleven badges as follows:

(a) the transfer or obligation was to an insider;

(b) the debtor retained possession or control of the property transferred after the transfer;

---

23 5 *Collier on Bankruptcy* ¶ 548.04[1][b], at 548-59.

24 *Id.* at ¶ 548.05[3], at 548-77.

25 *Brandt v. KLC Fin., Inc. (In re Equip. Acquisition Res., Inc.)*, 481 B.R. 422, 428 (Bankr. N.D. Ill. 2012); *Gouveia v. Cahillane (In re Cahillane)*, 408 B.R. 175, 191 (Bankr. N.D. Ind. 2009).

26 5 *Collier on Bankruptcy* ¶ 548.04[1][b], at 549-58.

27 *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005).

28 *See In re Taylor*, 133 F.3d 1336, 1338-39 (10th Cir. 1998) ("When one or more of these badges are present fraudulent intent can be inferred. Likewise, under 11 U.S.C. § 548(a)(1) bankruptcy courts consider similar badges of fraud as evidence of actual fraudulent intent.").

(c) the transfer or obligation was disclosed or concealed;

(d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) the transfer was of substantially all the debtor's assets;

(f) the debtor absconded;

(g) the debtor removed or concealed assets;

(h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[29]

In this case, the bankruptcy court found that Trustee had established, at least in part, seven of the eleven badges of fraud. In addition to its conclusion that Debtor was insolvent at the time of the transfers, the bankruptcy court also found that: 1) the transfers from Debtor (in his individual capacity or as the alter ego of KPC and KLC) were to an insider, i.e., Wife (in her individual capacity or as the alter ego of Laskin Medical);[30] 2) Debtor retained possession or control of the property after transfer with respect to the marital residence;[31] 3) Debtor was inconsistent and inattentive in his disclosure of the transfers;[32] 4) there was pending or threatened litigation against Debtor at the time of the Laskin

---

29 Colo. Rev. Stat. § 38-8-105(2) (2012) (section 4(b) of the Uniform Fraudulent Transfers Act as adopted by Colorado).

30 *Order* at 11, in Appellants' App. at 34.

31 *Id.* at 11-12, *in* Appellants' App. at 34-35.

32 *Id.* at 12, *in* Appellants' App. at 35.

Transfer;[33] 5) Debtor received no consideration in exchange for any of the transfers;[34] and 6) the Laskin Transfer occurred around the time that Debtor ceased operation of KPC, and therefore he knew or should have known he would be liable on KPC's debt obligations to Bank because of his personal guarantees of the loans.[35] And not insignificantly, following Debtor's transfers of the residence and cash to Wife and Laskin, Wife then transferred ownership of the residence and Laskin to the Family Trust. Again, the Family Trust was settled by Wife shortly before Debtor filed bankruptcy, named Wife as beneficiary and Mother as trustee, and is an offshore trust formed under the laws of the Cook Islands, a jurisdiction popular for its aggressive asset protection legislation.[36]

On appeal, Appellants focus solely on the issue of Debtor's solvency and do not refute the other badges of fraud found by the bankruptcy court. Therefore, even if the bankruptcy court erroneously found Debtor was insolvent when the transfers were made, the other badges of fraud sufficiently support the bankruptcy court's conclusion that the transfers were actually fraudulent.

**B. Constructive Fraud**

Having concluded the bankruptcy court did not err in determining the transfers were actually fraudulent, it is not necessary to examine whether the bankruptcy court erred in determining the transfers were constructively fraudulent. We do so briefly, however, to address Appellants' confusion regarding the statutory requirements for constructive fraud. In their brief, Appellants state "[p]ursuant to 11 U.S.C. § 548(a)(1)(B)(ii), evidence of

---

[33] *Id.* at 13, *in* Appellants' App. at 36.

[34] *Id.*

[35] *Id.* at 16, *in* Appellants' App. at 39.

[36] *See generally* 2 *Asset Protection: Domestic & Int'l L. & Tactics* § 20.6 (Duncan E. Osborne).

insolvency at the time of the transfer is necessary to show that there was fraud. A finding of insolvency is a priori to a finding of fraud."[37] Appellants then assert that "[i]f the court determines that the Debtor is insolvent, then all other 'badges of fraud' follow from that broad financial conclusion," those being undercapitalization or incurring debts without the ability to repay.[38] Appellants simultaneously misread the statute and confuse actual with constructive fraud.

Section 548(a)(1)(B) provides that a trustee may avoid a transfer if the debtor:

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> >
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> >
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; ***OR***
> >
> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.[39]

These statutory provisions are not "badges of fraud," which, as discussed above, is a term describing circumstances surrounding a transfer that permit an inference of intent for purposes of establishing actual fraud. Instead, these provisions are requirements for construing as fraudulent those transactions that have the consequences and legal effects of actual fraud, regardless of intent. Moreover,

---

[37] Appellants' Reply Brief at 4.

[38] *Id.* at 4-5.

[39] 11 U.S.C. § 548(a)(1)(B) (emphasis added).

the "fragile financial conditions" in (I) through (III) of § 548(a)(1)(B)(ii), and the special category of transfer described in (IV) are stated in the disjunctive. Therefore, only one of them need be met in addition to the requirement that the transfer was made in absence of the receipt of reasonably equivalent value.

In this case, the bankruptcy court not only found Debtor to be insolvent at the time he made the three transfers, but also that he was engaged in a business for which the remaining property was an unreasonably small capital, and that he knew or should have known that, upon KPC's default on its obligations to Bank, it would be impossible for him to pay them.[40] Therefore, even assuming Appellants' claims of error regarding valuation of KPC and its impact on Debtor's solvency have merit, those claims are not sufficient to reverse the bankruptcy court's conclusion that the transfers were constructively fraudulent because the Trustee also established existence of the alternative fragile financial conditions set forth in the statute.

## VI. CONCLUSION

Appellants have not demonstrated error by the bankruptcy court in determining that Trustee can avoid and pursue recovery of the three transfers of assets made by Debtor because they were both actually and constructively fraudulent. Accordingly, the bankruptcy court's order is AFFIRMED.

---

[40] *Order* at 19, *in* Appellants' App. at 42.